No. 25-3567

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

PAUL QASSIS AND PETRA HOLDINGS, LLC,
Plaintiffs/Appellants,

v.

BOROUGH OF CARLSTADT,
Defendant/Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
New Jersey – Newark
(2:22-cv-03713)

---

**BRIEF OF DEFENDANT/APPELLEE
BOROUGH OF CARLSTADT**

---

**CLEARY GIACOBBE ALFIERI JACOBS, LLC**
169 Ramapo Valley Road
Upper Level- Suite 105
Oakland, NJ  07436
(973) 845-6700
Jessica V. Henry, Esq.
Attorneys for Defendant/Appellee
Borough of Carlstadt

**TABLE OF CONTENTS**

PAGE

TABLE OF CONTENTS................................................ i

TABLE OF AUTHORITIES........................................... iii

STATEMENT OF THE CASE........................................... 1

    A.   RELEVANT FACTS.......................................... 1

    B.   PROCEDURAL HISTORY.................................... 10

SUMMARY OF THE ARGUMENT........................................ 11

STANDARD OF REVIEW............................................. 12

ARGUMENT...................................................... 14

    POINT I....................................................... 14

    THE TCA BARS THE COUNT THREE TORTIOUS INTERFERENCE CLAIM
    ....................................................... 14

        A.   Failure to File a Tort Claims Notice bars
            Jurisdiction.................................... 14

        B.   Alternatively, the TCA's Permit Immunity
            Applies......................................... 18

    POINT II...................................................... 19

    ALTERNATIVELY, PLAINTIFF CANNOT MEET THE ELEMENTS FOR
        TORTIOUS INTERFERENCE............................. 19

    POINT III..................................................... 22

    THE EQUAL PROTECTION CLAIM (COUNTS SIX AND EIGHT) WAS
        PROPERLY DISMISSED BECAUSE THE RECORD LACKS
        EVIDENCE OF AN UNCONSTITUTIONAL POLICY/CUSTOM, A
        SIMILARLY SITUATED COMPARATOR AND/OR A
        CONSTITUTIONAL DEPRIVATION........................ 22

    POINT IV...................................................... 37

    THE DUE PROCESS CLAIM (COUNTS SEVEN AND NINE) WAS
        PROPERLY DISMISSED BECAUSE THE RECORD LACKS
        EVIDENCE OF AN UNCONSTITUTIONAL POLICY/CUSTOM AND/OR
        CONDUCT SHOCKING THE CONSCIENCE..................... 37

    POINT V....................................................... 45

    THE RECORD NEGATES A TAKING (TOTAL AND PARTIAL) AND THE
        POLICE POWER BARS THE TAKING AND INVERSE
        CONDEMNATION CLAIMS................................. 45

Case: 25-3567    Document: 28    Page: 3    Date Filed: 06/05/2026

A.     No Total Taking.............................. 45

B.     No Partial Taking and Police Powers Bar a Taking........................................ 47

     (i)   No Interference with Reasonable Expectations.............................. 48

     (ii) Valid Exercise of Police Power bars Taking................................... 53

CONCLUSION............................................. 59

ii

**TABLE OF AUTHORITIES**

**Cases**

Acqua Dev. Corp. v. Twp. of Holmdel, 671 A.2d 636, 287 N.J. Super. 578 (Law Div. 1995)........................... 51

Affinity v. Healthcare Group Voorhees, LLC v. Twp. of Voorhees, 624 F. Supp.3d 494 (D.N.J. 2022)................. 37

Ajamian v. N. Twp. of Bergen, 103 N.J. Super. 61, 246 A.2d 521 (Law Div. 1968)............................. 53, 55

Anastasio v. Planning Bd. of West Orange Twp., 209 N.J. Super. 499, 507 A.2d 1194 (App. Div. 1986).............. 35

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ....................................................... 13

Andrews v. Scuilli, 853 F.3d 690 (3d Cir. 2017).............. 12

Bezerra v. Twp. of Belleville, 2006 WL 1971807 (App. Div., July 17, 2006)..................................... 18, 43

Bibb v. Navajo Freight Lines, 359 U.S. 520 (1959)............. 56

Birchwood Lakes Colony Club. Inc. v. Borough of Medford Lakes, 90 N.J. 582, 449 A.2d 472 (1982)............... 19

Button v. Snelson, 679 Fed. Appx. 150 (3d Cir. Feb. 10, 2017)................................................ 42

Cedar Point Nursery v. Hassid, 594 U.S. 139 (2021)............ 54

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)................ 12

Cent. Paper Distrib. Serv. v. Int'l Records Storage and Retrieval Serv., Inc., 325 N.J. Super. 225, 738 A.2d 962 (App. Div. 1999)................................... 20

Cherry Hill Towers LLC v. Twp. of Cherry Hill, 407 F. Supp.2d 648 (D.N.J. 2006)................................ 44

Children's Health Defense, Inc. v. Rutgers, 93 F.4th 66 (3d Cir. 2024)........................................... 34

City of St. Louis v. Praprotnik, 485 U.S. 112 (1988) ..................................................... passim

Cox v. Simon, 278 N.J. Super. 419, 651 A.2d 476 (App. Div. 1955)................................................. 21

D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 61 A.3d 906 (2013)...................................... 18

Dello Russo v. Nagel, 358 N.J. Super. 254, 817 A.2d 426 (App. Div. 2003)........................................ 19

Doby v. DeCrescenzo, 171 F.3d 858 (3d Cir. 1999).............. 30

Dolan v. City of Tigard, 512 U.S. 374 (1994)................. 58

Duffy v. Kent County Levy Court, 591 Fed. Appx. 41 (3d Cir., Nov. 14, 2014).................................... 55

East Cape May Assoc. v. State of New Jersey, DEP, 300 N.J. Super. 325, 693 A.2d 114 (App. Div. 1997)........... 54

Eichenlaub v. Twp. of Indiana, 385 F.3d 274 (3d Cir. 2004)........................................... 38, 39, 40

Fernandes v. City of Jersey City, 2017 WL 2799698 (D.N.J., June 27, 2017).................................. 18, 43

Friends of Peapack-Gladstone v. Peapack-Gladstone Land Use Bd., 971 A.2d 449, 407 N.J. Super. 404 (App. Div. 2009)............................................... 31

Galarza v. Szalczyk, 745 F.3d 634 (3d Cir. 2014)............. 35

Galik v. Clara Mass Med. Ctr., 167 N.J. 341, 771 A.2d 1141 (2001)...................................... 17, 18

Goldblatt v. Town of Hempstead, N.Y., 369 U.S. 590 (1962)..................................................... 56

Griffith v. State of New Jersey, DEP, 340 N.J. Super. 596, 775 A.2d 54 (App. Div. 2001)........................... 54

H.C. Equities, LP v. County of Union, 247 N.J. 366, 254 A.3d 659 (2021)............................ 15, 16, 17, 18

Hamer v. LivaNova Deutschland GmbH, 994 F.3d 173 (3d Cir. 2021)............................................... 36

Hartman v. Bank of N.Y. Mellon, 650 Fed. Appx. 89 (3d Cir., May 5, 2016)..................................... 26

Heine v. Bureau Chief Div. of Fire & Safety, 765 Fed. Appx. 816 (3d Cir., Mar. 13, 2019)..................... 26

Hightower v. City of Phila., 130 F.4th 352 (3d Cir. 2025)..................................................... 28

Highway Materials, Inc. v. Whitemarsh Twp., 386 Fed. Appx. 251 (3d Cir. July 7, 2010)............................ 40

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006)................................................. 24, 36

Hill v. Umpstead, 639 Fed. Appx. 60 (3d Cir. Feb. 2. 2016)....................................................... 35

Hilton Acres v. Klein, 174 A.2d 465, 35 N.J. 570 (1961)......................................................... 49

Home Builders League of South Jersey, Inc. v. Evesham Twp., 416 A.2d 81, 174 N.J. Super. 252 (Law Div. 1980)......................................................... 29

Howell Twp. v. Manasquan River Reg'l Sewerage Auth., 521 A.2d 858, 215 N.J. Super. 173 (App. Div. 1987)............ 51

J.P. Properties, Inc. v. Macy, 444 A.2d 1131, 183 N.J. Super. 572 (Law Div. 1982)............................... 28

James v. Vornlocker, 2022 WL 3927203 (D.N.J., Aug. 31, 2022)......................................... 34, 43

Joey's Auto Repair & Body Shop v. Fayette County, 785 Fed. Appx. 46 (3d Cir. Aug. 29, 2019)................. 36, 44

John E. Long, Inc. v. Borough of Ringwood, 61 F. Supp.2d 273 (D.N.J. 1998)............................. 36, 44, 53

Jones v. Morey's Pier, Inc., 230 N.J. 142, 165 A.3d 769 (2017)....................................................... 14

JWC Fitness, LLC v. Murphy, 469 N.J. Super. 414, 265 A.3d 164 (App. Div. 2021)...................................... 53

Kars 4 Kids Inc. v. America Can!, 98 F.4th 436 (3d Cir. 2024)......................................................... 36

Keenan v. City of Phila., 983 F.2d 459 (3d Cir. 1992) ....................................................... 34

Keystone Bituminous Coal Assn. v. Duncan, 771 F.2d 707 (3d Cir. 1985)......................................... 48

Kolitch v. Lindedahl, 100 N.J. 485, 497 A.2d 183 (1985)......................................................... 19

Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982)...................................... 58

Lucas v. S.C. Coastal Council, 505 U.S. 1003 (1992) ....................................................... 48, 54

Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 (1990)............ 13

McLaughlin v. Weichert Co. Realtors, 218 N.J. Super. 63, 526 A.2d 1119 (App. Div. 1987)........................... 21

v

McTernan v. City of York, PA, 564 F.3d 636 (3d Cir. 2009)............................................................ 24

Miller v. Pocono Ranch Lands Prop. Owners Ass'n, 557 Fed. Appx. 141 (3d Cir., Feb. 21, 2014)........................ 40

Monell v. Dep't of Soc. Serv. of New York, 436 U.S. 658 (1978)............................................. passim

Munoz v. City of Union City, 481 Fed. Appx. 754 (3d Cir., May 11, 2012)........................................ 45, 55

Murr v. Wisconsin, 582 U.S. 383 (2017)......................... 48

Nat'l Amusements, Inc. v. Borough of Palmyra, 843 F. Supp.2d 538 (D.N.J. 2012) aff'd 726 F.3d 57 (3d Cir. 2013)............................................................ 55

Natsis v. Turner, 2020 WL 4582018 (D.N.J., Aug. 10, 2020)...................................................... 53

Nekrilov v. Jersey City, 45 F.4th 662 (3d Cir. 2022) .................................................. 45, 48, 52

Norwood Easthill Assoc. v. Norwood Easthill Watch, 222 N.J. Super. 378, 536 A.2d 1317 (App. Div. 1988) .................................................................. 20

Pace Res., Inc. v. Shrewsbury Twp., 808 F.2d 1023 (3d Cir. 1987)....................................................... 59

Panzarella v. Navient Solutions, Inc., 37 F.4th 867 (3d Cir. 2022)....................................................... 12

Papaiya v. City of Union City, 238 Fed. Appx. 848 (3d Cir. Aug. 14, 2007)................................ 44, 49, 53

Pappas v. Bd. of Adjustment of Leonia, 254 N.J. Super. 52, 603 A.2d 65 (App. Div. 1992)....................... 45

Penn Cent. Transp. v. City of N.Y., 438 U.S. 104 (1978)................................................. 47, 53, 55

Plemmons v. Blue Chip Ins. Serv., Inc., 387 N.J Super. 551, 904 A.2d 825 (App. Div. 2006)................. passim

Porter v. City of Phila., 975 F.3d 374 (3d Cir. 2020) .............................................................. 26, 28

Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 563 A.2d 31 (1989).............................. 21

Property Owners Ass'n of N. Bergen v. N. Bergen Twp., 378 A.2d 25, 74 N.J. 327 (1977)............................... 50

Ptaszynski v. Uwaneme, 371 N.J. Super. 333, 853 A.2d 288 (App. Div. 2004)........................................ 15

Rezem Family Associates, LP v. Borough of Millstone, 423 N.J. Super. 103, 30 A.3d 1061 (App. Div. 2011)........... 37

Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 671 A.2d 567 (1996)....................................... 39

Road-Con, Inc. v. City of Phila., 120 F.4th 346 (3d Cir. 2024)....................................................... 34

Ruckelshaus v. Monsanto Co., 1467 U.S. 986 (1984)............. 48

Sameric Corp. v. City of Phila., 142 F.3d 582 (3d Cir. 1998)....................................................... 43

Scott v. Harris, 550 U.S. 372 (2007).......................... 13

Sinclair v. Dunagan, 905 F. Supp. 208 (D.N.J. 1995) ................................................................ 14

Skiles v. City of Reading, 449 Fed. Appx. 153 (3d Cir., Oct. 27, 2011)..................................... 38, 43

State v. J.R.S., 398 N.J. Super. 1, 939 A.2d 226 (App. Div. 2008)............................................... 15

Steele v. Cicchi, 855 F.3d 494 (3d Cir. 2017)................. 44

Stradford v. Sec'y Pa. Dep't of Corr., 53 F.4th 67 (3d Cir. 2022)................................................. 34

Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302 (2002)............................... 46, 47

The Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972)............................................... 49

Thorpe v. Upper Makefield Twp., 758 Fed. Appx. 258 (3d Cir. 2018)........................................... 32, 43

Tumpson v. Farina, 218 N.J. 450, 95 A.3d 210 (2014) ................................................................ 23

U. S. v. Baltimore & O. R. Co., 333 U.S. 169 (1948) ................................................................ 35

U.S. v. Riverside Bayview Homes, Inc., 474 U.S. 121 (1985)......................................................... 53

United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392 (3d Cir. 2003).................. 38

Village of Willowbrook v. Olech, 528 U.S. 562 (2000) ................................................................ 36

Voges v. Borough of Tinton Falls, 268 N.J. Super. 279, 633 A.2d 566 (App. Div. 1993)................ 28, 29, 50, 51

Vurimindi v. City of Phila., 521 Fed. Appx. 62 (3d Cir., Apr. 8, 2013)........................................ 34, 43

Whispering Woods at Bamm Hollow, Inc. v. Middletown Planning Bd., 220 N.J. Super. 161, 531 A.2d 770 (Law Div. 1987)........................................ 31, 32

Williams v. Borough of Clayton, 442 N.J. Super. 583, 126 A.3d 319 (App. Div. 2015)................................... 27

**Statutes**

42 U.S.C. §1983.................................... 22, 23, 32, 37

N.J.S.A. 10:6-2........................................... 22

N.J.S.A. 40A:60-5......................................... 27

N.J.S.A. 40A:60-6......................................... 27

N.J.S.A. 52:27D-121....................................... 29

N.J.S.A. 52:27D-123.1.............................. 29, 50, 51

N.J.S.A. 52:27D-124(k).................................... 29

N.J.S.A. 52:27D-126....................................... 51

N.J.S.A. 52:27D-126(a).............................. 29, 49

N.J.S.A. 52:27D-126(b)(1)........................... 29, 50

N.J.S.A. 52:27D-126(c).................................... 50

N.J.S.A. 52:27D-130....................................... 30

N.J.S.A. 52:27D-131....................................... 50

N.J.S.A. 52:27D-131(a).................................... 30

N.J.S.A. 52:27D-132(c).................................... 30

N.J.S.A. 59:2-5........................................... 18

N.J.S.A. 59:8-1........................................... 14

N.J.S.A. 59:8-3........................................... 14

N.J.S.A. 59:8-4........................................... 17

N.J.S.A. 59:8-8........................................... 14

N.J.S.A. 59:8-8(a)........................................ 15

**<u>Rules</u>**

<u>Fed. R. Civ. P.</u> 56......................................... 13

**<u>Regulations</u>**

<u>N.J.A.C.</u> 5:23-1.4.......................................... 29
<u>N.J.A.C.</u> 5:23-2.14(a)................................. 41, 49, 56
<u>N.J.A.C.</u> 5:23-2.15.......................................... 30
<u>N.J.A.C.</u> 5:23-2.15(f)(1)(i)(1)................................ 41
<u>N.J.A.C.</u> 5:23-2.15(f)(1)(ix)................................. 41
<u>N.J.A.C.</u> 5:23-2.15(f)(1)(vii)................................ 41
<u>N.J.A.C.</u> 5:23-2.16(j)(2)................................. 30, 35
<u>N.J.A.C.</u> 5:23-2.16(j)(2)(vii)................................ 35
<u>N.J.A.C.</u> 5:23-2.21(b)................................... 35, 41
<u>N.J.A.C.</u> 5:23-2.31(d)....................................... 30
<u>N.J.A.C.</u> 5:23-2.32(b)(2)..................................... 41
<u>N.J.A.C.</u> 5:23-2.32(b)(5)............................. 33, 41, 57
<u>N.J.A.C.</u> 5:23-2.34(a)....................................... 49
<u>N.J.A.C.</u> 5:23-2.34(b)....................................... 35
<u>N.J.A.C.</u> 5:23-4.4(a)(1)..................................... 29
<u>N.J.A.C.</u> 5:23-4.4(b)........................................ 50
<u>N.J.A.C.</u> 5:23-4.5(h)(1)(vii)................................ 50
<u>N.J.A.C.</u> 5:23A-2.1.......................................... 38

**STATEMENT OF THE CASE**

**A.    RELEVANT FACTS**[1]

**2017 Zoning Board Approval**

Plaintiff Paul Qassis is sole owner of plaintiff Petra Holdings LLC (collectively, "Plaintiff") which owns property located at 491 Broad Street, Carlstadt, New Jersey (the "Site"). Qassis Dep. 12:19-21; 13:12-17 (JA346). The Site is on the corner of Broad and First Streets with a two-family home on the left at 497 Broad Street (the "Adjacent Home") and First Street on the right. Neglia Cert., ¶4-5 (JA896).

By resolution of February 8, 2017 (the "Resolution"), the Zoning Board of Adjustment of the Borough of Carlstadt (the "Zoning Board") approved Plaintiff's development application for construction of an eight-unit multi-family building at the Site containing one (1) affordable housing unit (JA906-917). The Resolution (p. 11, ¶4-5) requires Plaintiff to: (1) "comply with the … the New Jersey Uniform Construction Code" (the "UCC"); and (2) enter into a Developer's Agreement with the Borough of Carlstadt (the "Borough"). (JA916).

---

[1] The Borough refers to its Fed. R. Civ. P. 56 Statement of Facts ("SOF") (JA76-128) for a fuller recitation of the facts.

1

**<u>2020 Developer's Agreement</u>**

From 2017 through May 2020, Plaintiff and the Borough negotiated a Developer's Agreement. Qassis Dep. 102:17-21 (JA369). On June 4, 2020, Robert Regan, Esq., an affordable housing monitor ("Monitor") appointed in 2006 in a separate matter, executed the Developer's Agreement for the Borough at the request of the Borough attorney who conveyed continuing safety concerns with the project. 5/26/20 email (JA1461); Developer's Agreement (JA487); 6/1/06 Order, ¶4 (JA470); 5/25/20 letter from Joseph Donahue, Esq. (JA1502). The Monitor's 2006 appointment was limited to affordable housing and provided that the "Monitor shall have no role in local government affairs except as is provided in this judgment." ¶1, ¶4 (JA464).

The Developer's Agreement (JA472-490) requires Plaintiff to: (1) ensure construction does "not interfere with adjoining landowners" (¶22.3); (2) comply with all Federal, State and local government laws, regulations and orders (¶24.2); (3) comply with the Borough Engineer's directives (¶2.1; ¶12.1) and orders issued by duly constituted officials (¶24.2) and (4) abide by the Resolution and approved plans (¶1.5-1.6; ¶2.1; ¶12.3).

The Developer's Agreement provides for the issuance of Stop Work Orders whenever Plaintiff: (1) fails to comply with the Developer's Agreement or the Resolution; or (2) "constructs the project contrary to the approved plans" (¶26.4) (JA484). The

Developer's Agreement provides that: (1) "if conditions detrimental to health, life, limb or property are created by the Developer, they shall be promptly corrected at the Developer's expense" (¶26.5) (JA484); and (2) in the event of an emergency, "the Borough is hereby empowered to take such corrective measures as in its sole discretion it may deem necessary to resolve the emergency" and to recover the cost thereof (¶26.6) (JA485).[2]

### **Construction Issues Predating the July 10, 2020 Storm**

On June 9, 2020, the Borough Construction Official issued a memorandum advising of "issues … to be addressed prior to the issuance of permits." 6/9/20 Recanati memorandum (JA491); Recanati Dep. 93:3-14 (JA266).[3] Nevertheless, Plaintiff began excavation at the Site in mid-June of 2020. 6/12/25 Reme Dep. 41:9-14 (JA495). On June 16, 2020, the Borough Inspector reported that he inspected the Site that day and "informed [Plaintiff] that the dirt must be protected on the site…." 6/16/20 Sadonis memorandum (JA257).

On June 17, 2020, the Borough Engineer, Gregory Polyniak of Neglia, advised of issues with the Site including encroachment on the Adjacent Home, excavation with vertical wall cuts without

---

[2] Plaintiff misrepresents that the Borough conceded the Monitor's authority in the Developer's Agreement (Pb30) but the Developer's Agreement makes no mention of the Monitor (JA472-490). ("Pb30" denotes Plaintiff's Brief at page 30).
[3] Plaintiff misrepresents the date of this memorandum as June 15, 2020 (Pb7).

sheeting/shoring methods and emphasized the immediate need for signed and sealed shoring plans and construction of sheeting/shoring of the excavation to protect the public and the Adjacent Home. Neglia Cert., ¶7 (JA896); 6/17/20 Polyniak email (JA921).

Two days later, the Adjacent Home's developer filed a police report for damage from excavation at the Site. Nicoletti Cert., ¶12 (JA872; JA883-885). The police report reflects that Plaintiff admitted encroaching on the Adjacent Home (JA885). The Adjacent Home's developer certified that Plaintiff had dug a hole "within inches" of the Adjacent Home's foundation "with absolutely no structure retaining the dirt from caving in and eroding" and provided supporting photographs. Nicoletti Cert., ¶11-13 and photographs (JA872-881). Plaintiff's engineer acknowledged damage to the Adjacent Home. 5/12/25 Reme Dep. 89:24-90:8 (JA511-512).

Between June 24, 2020 and June 25, 2020, the Construction Official and the Inspector both memorialized the lack of signed and sealed shoring plans. Recanati and 6/25/20 Sadonis memos (JA530-532). As of June 29, 2020, shoring was not completed and there were concerns over "cracks forming on the" Adjacent Home. 5/12/25 Reme Dep. 58:13-59:7; 61:7-18 (JA505).

On June 30, 2020, the Borough Engineer advised the Borough that Plaintiff must submit a signed and sealed sheeting/shoring

4

plan as soon as possible. Neglia Cert., ¶8 (JA897); 7/1/20 email from Qassis to Mark Reme (JA547). The Inspector memorialized and photographed inadequate shoring of excavation including a breach in the shoring wall. Sadonis memos dated 6/20/20 (JA533-546), 7/8/20 and 7/10/20 (JA562-563). Plaintiff's engineer, Mark Reme, admitted that a photograph attached to the Inspector's report shows that "the section towards the rear of the neighboring property's wall … did not have any shoring in place." 5/12/25 Reme Dep. 52:17-53:3 (JA504). Plaintiff's engineer also admitted that he was made aware: (1) "that there was some gapping between the wall and the excavation and there was no shoring placed adjacent to the sidewalk on Broad Street"; (2) of a blowout on the shoring wall on the side of the Adjoining Property; and (3) that the wood shoring wall was not against the earth that it was supposed to hold in place. 5/12/25 Reme Dep. 50:17-51:1 (Ja504); 79:6-80:24 (JA509).

The Construction Official and the Borough Engineer had discussions with Plaintiff's engineer about the need for more robust shoring to protect the Adjacent Home. 5/12/25 Reme Dep. 85:4-86:6; 101:8-102:16; 103:23-104:23; 109:22-110:14 (JA510-511; JA513-516); 6/12/25 Reme Dep. 47:8-16; 49:15-50:3 (JA1644-1645). The Plaintiff's engineer admitted that: (1) "we knew there was a problem" and "we had to develop something that

was … more substantial to … protect" the Adjacent Home and the "sidewalk and roadways on Broad Street and First Street"; and (2) the Borough was "absolutely" concerned with protecting the Adjacent Home given the expected weather events. 5/12/25 Reme Dep. 85:16-86:6; 102:13-16 (JA510; JA514).

As a result, Plaintiff's engineer agreed to provide a revised shoring/sheeting plan by the morning of July 9, 2020 at the latest but did not provide it until that afternoon. Neglia Cert., ¶10-15 (JA897-898); 7/9/20 emails (JA923-928). The Borough Engineer and a consulting engineer, Nathan Shuman of Titan Engineers, PC ("Titan"), advised Plaintiff's counsel that day that the revised shoring/sheeting plan was unacceptable. Neglia Cert., ¶15 (JA898). The Borough requested that Plaintiff immediately stabilize the Site per OSHA regulations by backfilling the excavation at the Site. Id.; 7/10/20 Polyniak 1:33 p.m. and 2:20 p.m. emails (JA931-935). Titan determined that the Site was not OSHA compliant. Shuman Cert., ¶5-7 (JA989); Neglia Cert., ¶16 (JA898-899); 7/9/20 Shuman email (JA942-943). The Borough Engineer advised Plaintiff's engineer and attorney that the Borough may have no choice but to take action to protect public safety given an imminent storm. Neglia Cert., ¶12 (JA897-898); 7/9/20 Polyniak email (JA924).

## Storm Fay and Emergency Declaration of July 10, 2020

On July 10, 2020, the purchaser of the Adjacent Home called the Construction Department in a panic that her house would fall into the excavation. Crifasi Dep. 112:17-25; 117:9-12 (JA167-168). The Borough's Construction Official, Administrator, Engineer and Titan reported to the Site. Crifasi Dep. 112:17-25; 114:25-115:3 (JA167-168); Neglia Cert., ¶17 (JA899); Shuman Cert., ¶8 (JA989-990). The Borough Engineer advised Plaintiff's engineer, "We want the entire site … secured to satisfy OSHA standards" and asked Plaintiff's engineer to "inspect the site immediately" (7/10/20 Polyniak 5:28 p.m. email) (JA948-949) but Plaintiff's engineer did not report to the Site that day. Qassis Dep. 162:25-163:16 (JA384).

Both the Borough Engineer and Titan attested to insufficient, failing shoring of the Site's excavation and Titan recommended emergency stabilization. Neglia Cert., ¶18-19 (JA899); Shuman Cert., ¶8-9 (JA989-990). The Borough Engineer repeatedly sought to have Plaintiff immediately stabilize the Site with backfill. Neglia Cert., ¶22, ¶25 (JA899-900); 7/10/20 Polyniak 2:10 p.m., 1:33 p.m. and 5:28 p.m. emails (JA932, JA935, JA949).[4] Plaintiff's engineer testified that he advised Plaintiff that "this was the only option" since Plaintiff "certainly wasn't going to be able to

---

[4] The Monitor was copied on the Borough Engineer's emails about the emergency but did not address it (JA924-935; JA946).

build a more robust" shoring "on a Friday afternoon" but Plaintiff "was not … receptive about the request." 5/12/25 Reme Dep 113:19-114:14 (JA516-517). Plaintiff testified, "What they wanted us to do, the town … is backfill more with stone which … was not possible because the rain already started and we cannot backfill while the rain is … happening." Qassis Dep. 158:18-23 (JA383). Plaintiff claimed that "backfilling is not possible." Qassis email (JA936).

In consultation with Titan and Fletcher Creamer, an infrastructure contractor, the Borough Engineer determined that the Site was a public health and safety issue which had to be addressed immediately and issued an emergency declaration. Neglia Cert., ¶27-29 (JA901). At 8:35 p.m., the Borough Engineer advised that the Site would be backfilled and Fletcher Creamer proceeded to backfill the Site. Neglia Cert., ¶30-31 (JA901). Plaintiff removed the backfill later that year. Qassis Dep. 183:4-13 (JA389).

### Construction Issues after the July 10, 2020 Storm

After the storm, the architect for the Adjacent Home documented damage to the Adjacent Home (including cracks in the foundation) from inadequate shoring of the excavation at the Site. 7/24/20 Donato Report and photographs (JA616-624); Donato Dep. 10:20-11:4; 12:5-12; 29:5-24; 32:24-33:4; 98:3-9; 104:5-105:4 (JA567; JA572-573; JA589-591).

8

Plaintiff's engineer provided revised shoring plans which underwent several revisions based on Titan's comments. Neglia Cert., ¶32 (JA901); Shuman Cert., ¶14, 16-17 (JA990-991). Titan instructed that excavation work cease until Plaintiff submitted shoring plans meeting with the Borough Engineer's approval and determined that Plaintiff's proposed shoring system was "highly unstable" and "affects the safety of surrounding sidewalks, roadways and neighboring buildings." Shuman Cert., ¶15 (JA990-991); 9/9/20 Shuman report, p. 8, ¶1-2 (JA1291). On September 11, 2020, the Construction Official issued a Stop Work Order ("SWO") for "work performed without a required permit" in "violation of N.J.A.C. 5:23-2.14(a)" of the UCC (JA627-628). Similar SWOs issued on June 15, 2020 and June 25, 2020 (JA629-632).

On September 14, 2020, the Monitor encouraged the engineers to resolve remaining issues. Qassis Cert., ¶93 (JA1452-1453). On September 15, 2020, Plaintiff's engineer met with Titan and the Borough Engineer to review the shoring plans. Plaintiff's Answer to Interrogatory No. 11 (JA38); Qassis Dep. 188:11-191:5 (JA390-391). On September 16, 2020, Plaintiff's engineer provided further revised shoring plans which were deemed compliant by Titan on September 17, 2020. 9/17/20 Shuman report, p. 9, ¶1 (JA1311); Qassis Dep. 191:22-24 (JA391). On September 18, 2020, Plaintiff

received a footings/foundation permit (JA644-646); Recanati Dep. 172:2-7 (JA286).

### Deviations Requiring Further Zoning Board Approval

Plaintiff's construction of the project deviated significantly from the approved plans. 7/5/22, 9/9/22 and 10/2/24 Recanati letters (JA693-694; JA704-705); Dalton Cert., ¶5-6 (JA867); Recanati Dep. 160:22-162:24 (JA283-284). As a result, a SWO issued and Plaintiff had to return to the Zoning Board per the Developer's Agreement (¶1.5; ¶1.6; ¶2.1; ¶8.1; ¶26.4) (JA474; JA484); Neglia Cert., ¶42, ¶47 (JA903-904); 8/1/23 SWO (JA699). On December 22, 2022, Plaintiff submitted an application to the Zoning Board for changes (JA695-698) but failed to provide required items. Neglia Cert., ¶39-40, ¶43, ¶45-46 (JA903-904).

### Windows Installed in Violation of Fire Code

On June 25, 2024, the Construction Official issued a SWO because Plaintiff installed windows in violation of the UCC's fire provisions. 6/25/24 SWO (JA706-707); correspondence from Jessica V. Henry, Esq. to Matthew Baker, Esq. dated June 25, 2024 (JA708).

### B.    PROCEDURAL HISTORY

On June 10, 2022, Plaintiff filed the complaint (JA40-71). On October 27, 2022, the Borough filed an answer to the complaint (ECF14) which was amended on July 12, 2023 (ECF30).

On August 18, 2025, the Borough filed a motion for summary judgment (JA74-75).  On September 4-5, 2025, Plaintiff filed

opposition including: (1) a sham affidavit rehashing the conclusory allegations of the complaint (JA1433-1458); and (2) a response to the SOF admitting the majority of the SOF (JA1353-1432). Supplemental Counsel Certification, ¶3-5 (JA1714-1716). The balance of Plaintiff's response to the SOF consisted of prohibited argument and conclusions in an effort to create the appearance of factual disputes while citing to exhibits which did not actually refute the SOF. On September 15, 2025, the Borough filed reply papers (JA1701-1860). On November 10, 2025, the District Court granted partial summary judgment dismissing counts Three through Nine of the complaint, but declining supplemental jurisdiction over Counts One, Two and Ten (JA1-22).

## SUMMARY OF THE ARGUMENT

The District Court properly granted summary judgment as a matter of law. The New Jersey Tort Claims Act bars Count Three for tortious interference given Plaintiff's failure to serve a tort claims notice and as a matter of permit immunity. Alternatively, Plaintiff cannot meet the elements for tortious interference. Counts Four (Taking) and Five (Inverse Condemnation) were properly dismissed because Plaintiff was not deprived of all economically beneficial use of the property, there was no undue interference with reasonable investment backed expectations, and the claims are barred by the Borough's police power. Counts Six and Eight (State and Federal Equal Protection)

were properly dismissed because the record lacks evidence of: (1) a Borough policy or custom of discrimination against Middle Eastern developers; (2) a similarly situated developer; and/or (3) deprivation of a Constitutional right.  Counts Seven and Nine (State and Federal substantive Due Process) were properly dismissed because the record lacks evidence of: (1) a Borough policy or custom of discrimination against Middle Eastern developers; and/or (2) conduct which "shocks the conscience."

<u>**STANDARD OF REVIEW**</u>

This Court reviews *de novo* the District Court's grant of summary judgment applying the same test on review that governed the District Court.  <u>Andrews v. Scuilli</u>, 853 F.3d 690, 696 (3d Cir. 2017).  The Court may affirm on any basis supported by the record, even if it departs from the District Court's rationale. <u>Panzarella v. Navient Solutions, Inc.</u>, 37 F.4th 867, 872 (3d Cir. 2022).  The Court will reverse only when material facts are in dispute or when the undisputed facts, viewed in a light most favorable to the non-movant, could objectively support a jury's verdict in favor of the non-movant.  <u>Andrews</u>, 853 F.3d at 696.  In order to defeat a motion for summary judgment, a party must do more than restate the initial allegations of the complaint, or provide unsupported conclusions of fact but rather must point to concrete evidence in the record which supports each element of the claim.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323 (1986).

Failure to do so entitles the moving party to judgment.  Fed. R. Civ. P. 56; Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990).  The mere existence of *some* alleged factual dispute between the parties will not defeat summary judgment; the requirement is that there be no *genuine* issue of *material* fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  The facts are viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380 (2007).  The non-movant must do more than simply show that there is some metaphysical doubt as to the material facts.  Id. When opposing parties tell two different stories, one of which is contradicted by the record, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  Id.  This standard of review applies to every point in this brief.

**ARGUMENT**

**POINT I**
**THE TCA BARS THE COUNT THREE TORTIOUS INTERFERENCE CLAIM**

A. **Failure to File a Tort Claims Notice bars Jurisdiction**

Plaintiff's Count III tortious interference claim alleges that the Borough interfered with his Centra Loan Agreement via SWOs and the July 10, 2020 emergency action causing Plaintiff to incur additional interest payments on the loan (Complaint, ¶120-121) (JA684).

The New Jersey Tort Claims Act (the "TCA"), N.J.S.A. 59:8-1, *et. seq.*, bars Plaintiff's claim because Plaintiff concedes he did not file a tort claims notice. Plaintiff's Answer to Interrogatory No. 1 (JA637). Pursuant to N.J.S.A. 59:8-3, "No action shall be brought against a public entity or public employee … unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." Prior to filing an action against a public entity or public employee, the claimant must first serve a notice of claim within 90 days of accrual of the claim. Jones v. Morey's Pier, Inc., 230 N.J. 142, 154, 165 A.3d 769, 776 (2017); Sinclair v. Dunagan, 905 F. Supp. 208, 211 (D.N.J. 1995); N.J.S.A. 59:8-8. Otherwise, the claimant is "forever barred from recovering against" the public entity. Id. The notice of claim, as a precondition to bringing

14

suit, is an indispensable jurisdictional prerequisite to prosecution of common law tort claims against a public entity. State v. J.R.S., 398 N.J. Super. 1, 5, 939 A.2d 226, 229 (App. Div. 2008); Ptaszynski v. Uwaneme, 371 N.J. Super. 333, 343, 853 A.2d 288, 294 (App. Div. 2004).  The Court is without jurisdiction to entertain the action when that requirement has not been met. Id.

Pursuant to the controlling New Jersey Supreme Court decision in H.C. Equities, LP v. County of Union, 247 N.J. 366, 254 A.3d 659 (2021), Plaintiff cannot establish substantial compliance with the notice requirement based on his counsel's letters and Count III is "forever barred."  N.J.S.A. 59:8-8(a).  H.C. Equities held that: (1) a notice of claim must be a single document served on one identifiable date; and (2) three letters from plaintiff's counsel to public entity counsel did not substantially comply with the notice requirement even though the letters threatened litigation to recover damages, requested a litigation hold and specifically mentioned the possibility of pursuing tortious interference claims.  Id. at 247 N.J. 371, 386-387, 254 A.3d 662, 671-672.  The Court reasoned:

> [A] substantial compliance analysis relying on plaintiff's multiple, discrete communications … is inconsistent with the Tort Claims Act. The Legislature clearly envisioned that a claimant would disclose to a public entity its tort causes of action in a **single document**

that provides clear notice of its claim, not in a series of incomplete communications that must be considered together in order to infer that a claim may be filed.

….

it is inherently problematic to conclude that a collection of letters can, together, substantially comply with the notice requirement. The Tort Claims Act consistently uses the singular. And the Legislature's express purpose to "provide the public entity with prompt notification of a claim," … is not met if the public entity is required to analyze multiple communications and determine whether, viewed in the aggregate, they reveal an intent to sue.

In addition, the Legislature clearly intended that there be one identifiable date -- not a series of dates -- on which the public entity receives notice…. A ruling that multiple documents can collectively constitute effective notice of a tort claim invites the very confusion that the Act was intended to avoid.

Id. at 247 N.J. 386-387, 254 A.3d 671-672 (emphasis added).

The same holds for Plaintiff's counsel's three letters to Borough counsel (JA1530-1540), none of which asserts that the "Borough intentionally interfered with [Plaintiff's] … Centra Loan Agreement" causing Plaintiff "additional interest payments" -- the actual basis of the claim (JA684). The letters do not even mention the Centra Loan nor specify amounts claimed -- much less the additional interest. The letters merely demand removal of backfill and issuance of permits and reject responsibility for emergency action costs. Therefore, the Borough could not know "exactly what

16

claim was being asserted" -- *i.e.*, tortious interference with a loan (Pb28).  Thus, the letters lack the requisite contents for a notice which must specify "the date, place and other circumstances of the occurrence or transaction" giving rise to the claim, a "general description of the …damage or loss" and "the amount claimed as of the date of the presentation of the claim, including the estimated amount of any prospective … damage, or loss … together with the basis of computation of the amount claimed." N.J.S.A. 59:8-4.

Moreover, Plaintiff adduces no steps to comply with the TCA nor reasonable explanation for his lack of strict compliance as is required for substantial compliance.  H.C. Equities, at 257 N.J. at 388, 390, 254 A.3d at 672, 673.  Plaintiff's assertion that he assumed the tortious interference claim would be resolved by the Monitor instead of by litigation (Pb28) is no basis for failure to comply with the TCA especially since Plaintiff was represented by counsel and the Monitor has no power to resolve tort claims. 6/1/06 Order (JA462-471). Plaintiff cites no authority for the erroneous suggestion that correspondence from the Monitor constitutes substantial compliance by Plaintiff with the TCA's notice requirements (Pb29-30).

Plaintiff's reliance on Galik v. Clara Mass Med. Ctr., 167 N.J. 341, 771 A.2d 1141 (2001) is unavailing.  Galik did not

17

involve the TCA but instead addressed the Affidavit of Merit in medical malpractice cases.  In any event, the District Court identified the Galik factors and correctly determined that Plaintiff's counsel's letters did not substantially comply with the TCA's notice requirements pursuant to the controlling decision of H.C. Equities (JA11-13) which held that counsel letters -- such as those in this matter -- fail to satisfy the Galik factors. Similarly, D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 61 A.3d 906 (2013) does not avail Plaintiff.  D.D. held that plaintiff's verbal provision of information with her counsel's assistance did not constitute substantial compliance.  Id. at 213 N.J. 159-160, 61 A.3d 923.

**B.   Alternatively, the TCA's Permit Immunity Applies**

To the extent the claim is based on the issuance of SWOs and the imposition of conditions for the issuance of permits, it is barred by the TCA which provides that "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure to issue … any permit … or similar authorization…." N.J.S.A. 59:2-5.  *See also* Fernandes v. City of Jersey City, 2017 WL 2799698, at *18 (D.N.J., June 27, 2017) (dismissing negligence claim based on issuance of stop work orders pursuant to N.J.S.A. 59:2-5 immunity); Bezerra v. Twp. of Belleville, 2006 WL 1971807, at *3 (App. Div., July 17, 2006) (Township was absolutely immune where plaintiff alleged issuance

18

of stop work order and intentional delay in approving development application). Plaintiff's reliance on inapposite case law which does not address the TCA's permit immunity is unavailing especially since the case law does not support Plaintiff's legal contentions. Pb32 *citing* Kolitch v. Lindedahl, 100 N.J. 485, 497 A.2d 183 (1985) and Birchwood Lakes Colony Club. Inc. v. Borough of Medford Lakes, 90 N.J. 582, 449 A.2d 472 (1982).

**POINT II**

**ALTERNATIVELY, PLAINTIFF CANNOT MEET THE ELEMENTS FOR TORTIOUS INTERFERENCE**

Plaintiff cannot maintain a claim for tortious interference with contract because the record lacks evidence of the following requisite elements: (1) the Borough's actual interference with Plaintiff's loan agreement; (2) the Borough's interference was inflicted intentionally, meaning that the Borough desired to bring it about or knew that the interference was certain or substantially certain to occur as a result of its action; (3) the interference was without justification; and (4) the interference caused damage. Dello Russo v. Nagel, 358 N.J. Super. 254, 268, 817 A.2d 426, 434 (App. Div. 2003).

Plaintiff cannot prove the first prong -- actual interference -- because, at his deposition, Plaintiff did not testify to any facts demonstrating interference with his loan, but only testified that: (1) he told the Construction Official about his loan even though the Construction Official never asked about

19

it; and (2) **he does not know whether anyone from the Borough ever contacted his lender.**    Qassis Dep. 232:21-233:2; 233:13-18; 104:23-105:1 (JA401; JA369).    In Cent. Paper Distrib. Serv. v. Int'l Records Storage and Retrieval Serv., Inc., 325 N.J. Super. 225, 738 A.2d 962 (App. Div. 1999), the Appellate Division affirmed summary judgment dismissal of a tortious interference claim because the "Plaintiffs made no showing that defendants had dealt with KJS [a prospective purchaser of plaintiffs' building] at all in an effort to dissuade that entity from dealing with plaintiffs or to persuade KJS to withdraw its offer. **Some such efforts addressed to the third party**'s involvement or its interests **are** … **essential** …. Here, there was no showing of any … conduct which could be seen as intermeddling in the relationship between plaintiffs and their prospective purchaser, KJS." 325 N.J. Super. at 232-233, 738 A.2d at 967 (emphasis added).  *See also* Norwood Easthill Assoc. v. Norwood Easthill Watch, 222 N.J. Super. 378, 385, 536 A.2d 1317, 1320-1321 (App. Div. 1988) (affirming summary judgment dismissal and finding no "actual interference" by defendants with the settlement agreement which remained intact). The same result is warranted here where there is no evidence of the Borough intermeddling in the relationship between Plaintiff and his lender.

Plaintiff cannot satisfy the second and third prongs as he cannot prove that the Borough acted with malice, *i.e.*, "intentionally commit[ted] a wrong without excuse or justification." Cox v. Simon, 278 N.J. Super. 419, 433, 651 A.2d 476, 483 (App. Div. 1955). Specifically, Plaintiff must prove that the Borough engaged in conduct addressed to the lender/loan agreement which transgressed generally accepted standards of common morality. McLaughlin v. Weichert Co. Realtors, 218 N.J. Super. 63, 67, 526 A.2d 1119, 1121 (App. Div. 1987); Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 757, 563 A.2d 31, 40 (1989). The record is devoid of any such evidence. Construction oversight was addressed to safety and UCC compliance and involved no Borough interaction with Plaintiff's lender.

Moreover, Plaintiff cannot prove the fourth prong -- causation. The complaint alleges that the Borough interfered with Plaintiff's Centra Loan Agreement via the three 2020 SWOs and the July 10, 2020 emergency action causing Plaintiff to incur additional interest payments on the loan (JA684-685). However, Plaintiff did not obtain the Centra Loan until after the July 10, 2020 emergency action and 2020 SWOs.[5] Plaintiff certified

---

[5] At the time Plaintiff filed his complaint on June 10, 2022, SWOs had issued on June 15, 2020 (JA629-630), June 25, 2020 (JA631-632) and September 11, 2020 (JA627-628).

that he secured a $2,000,000 loan from Centra 491 Broad Partners LLC in December 2020. Plaintiff Cert., ¶102 (JA1454); Qassis Dep. 14:22-15:2; 16:13-24 (JA347). Moreover, there is no evidence in the record substantiating that the SWOs and emergency action actually caused additional interest on the Centra Loan. Rather, any additional interest would accrue pursuant to the loan terms which Plaintiff accepted <u>after</u> the 2020 SWOs and the July 10, 2020 emergency action and <u>after</u> Plaintiff obtained his permit (JA644-646).

**POINT III**
**THE EQUAL PROTECTION CLAIM (COUNTS SIX AND EIGHT) WAS PROPERLY DISMISSED BECAUSE THE RECORD LACKS EVIDENCE OF AN UNCONSTITUTIONAL POLICY/CUSTOM, A SIMILARLY SITUATED COMPARATOR AND/OR A CONSTITUTIONAL DEPRIVATION**

Counts Six and Eight of the complaint (¶139; ¶152) (JA66; JA68) allege that the Borough's attorney, engineer and Construction Official deprived Plaintiff of equal protection pursuant to a Borough policy or custom of opposition to developers of Middle Eastern descent in violation of 42 <u>U.S.C.</u> §1983 ("§1983") and the New Jersey Civil Rights Act ("NJCRA"), <u>N.J.S.A.</u> 10:6-2. These Counts fail for three reasons.

*First*, the record lacks evidence of a Borough policy or custom of opposition to developers of Middle Eastern descent. A "municipality cannot be held liable *solely* because it employs a tortfeasor." <u>Monell v. Dep't of Soc. Serv. of New York</u>, 436 U.S. 658, 691 (1978). A municipality, such as the Borough, cannot be

22

held liable for the unconstitutional acts of its employees on a theory of vicarious liability or *respondeat superior*.  Id. at 691, 692; Tumpson v. Farina, 218 N.J. 450, 474, 95 A.3d 210, 223-224 (2014) (in interpreting the NJCRA, New Jersey courts look to federal cases analyzing §1983).

Thus, a plaintiff cannot sue a municipality under §1983 or the NJCRA "for an injury inflicted solely by its employees or agents"; rather, a municipality could only be held liable when execution of its governmental "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury…." Monell, 436 U.S. at 694; City of St. Louis v. Praprotnik, 485 U.S. 112, 122, 123 (1988) (municipalities can be held liable "only when their official policies cause their employees to violate another person's constitutional rights").

To prevail on a claim asserting municipal liability, a plaintiff must establish that the allegedly unconstitutional action "implements or executes **a policy statement, ordinance, regulation or decision officially promulgated and adopted by that body's officers**" and that the official policy is responsible for the deprivation of Constitutional rights. Monell, 436 U.S. at 690 (emphasis added).  Only those municipal officials who have final policy making authority may by their actions subject the government

to liability.  Praprotnik, 485 U.S. at 123.  An official has final policy-making authority if the official is responsible for making policy in the particular area of municipal business in question and the official's authority to make policy in that area is final and unreviewable.  Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006); Praprotnik, 485 U.S. at 123.  Whether an "official has final policy-making authority is a question of state law." Id.

Alternatively, a plaintiff may demonstrate "constitutional deprivations visited pursuant to governmental custom."  Monell, 436 U.S. at 690-691. Course of conduct is deemed to be a custom when persistent and widespread practices of state officials are so permanent and well settled so as to constitute a custom or usage with the force of law.  Monell, 436 U.S. at 691.  Significantly, **custom requires proof of knowledge and acquiescence by the policymakers.**  McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009).

In Praprotnik *supra*, the United States Supreme Court reaffirmed that the mere exercise of discretion by a municipal employee does not create municipal liability.  Praprotnik, 483 U.S. at 126.  The Court elaborated, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority,

24

especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or unstated rationale." Praprotnik, 483 U.S. at 130. The plaintiff therein alleged that the city's directors transferred and laid him off as retribution for appealing his suspension with the civil service commission. On appeal, the Supreme Court reversed a lower court decision holding the city liable for its directors' decisions. The Court reiterated that "**the identification of policymaking officials is a question of state law**" and pointed out that, under the city's charter, the Mayor and Aldermen are authorized to adopt ordinances related to personnel administration. Praprotnik, 483 U.S. at 124, 126 (emphasis added). The Court further reasoned, "The Mayor and Aldermen enacted no ordinance designated to retaliate against respondent …." Praprotnik, 483 U.S. at 128. The Court rejected the lower court's conclusion that the city's directors, as appointing authorities with authority to initiate transfers and layoffs, were policymakers because their decisions were not reviewed for substantive propriety by higher supervisory officials. Praprotnik, 483 U.S. at 129. The Court found that proposition insufficient to support the conclusion that the directors were authorized to establish employment policy for the city. Id. The Court explained that, where the city policy was set by the Mayor, only decisions by the Mayor would provide a basis

25

for the city's liability even if the Mayor left the appointing authorities discretion to hire and fire and they exercised that discretion in an unconstitutional manner. <u>Praprotnik</u>, 485 U.S. at 129-130. "When an official's discretionary decisions are constrained by policies not of that official's making, these policies, rather than the subordinate's departure from them, are the act of the municipality." <u>Praprotnik</u>, 485 U.S. at 127. *See also* <u>Porter v. City of Phila.</u>, 975 F.3d 374, 385 (3d Cir. 2020) (the fact that an official has discretion in the exercise of particular functions does not alone give rise to municipal liability based on an exercise of that discretion).

In <u>Heine v. Bureau Chief Div. of Fire & Safety</u>, 765 Fed. Appx. 816, 821 (3d Cir., Mar. 13, 2019), the Third Circuit affirmed dismissal of §1983 claims where the plaintiffs did not explain how municipal citations and fines issued in connection with inspections and code enforcement occurred as a result of an unconstitutional municipal policy or custom. The Third Circuit found insufficient plaintiffs' argument that "the inspector's methods are often the results of customs, policies and practices in the town." <u>Id.</u> at 821, n. 4. *See also* <u>Hartman v. Bank of N.Y. Mellon</u>, 650 Fed. Appx. 89, 92 (3d Cir., May 5, 2016) (affirming dismissal where plaintiff alleging racial discrimination did not adduce governmental policy or custom).

The record contains no evidence of a governmental policy or custom of opposition to Middle Eastern developers. Plaintiff's deposition testimony identified no "officially sanctioned or ordered" policy or custom of the Borough (Praprotnik, 485 U.S. at 123) which was unconstitutional and deprived him of any constitutional right; rather, he testified that he believed the Borough had a policy or custom of opposition to Middle Eastern developers only because of "the way they treated me." Qassis Dep. 105:7-21 (JA369).

The Mayor and Council are the lawmakers and policymakers of the Borough. Crifasi Dep. 20:12-14; 23:3-8; 132:9-13 (JA145-146; JA172). *See also* N.J.S.A. 40A:60-5; N.J.S.A. 40A:60-6; Borough Ordinance, ¶2-4 - ¶2-6 (JA721-724). The Mayor and Council are the Borough's Governing Body. Williams v. Borough of Clayton, 442 N.J. Super. 583, 587, 126 A.3d 319, 321 (App. Div. 2015). It is undisputed that, years before this lawsuit, the Mayor and Council, as the Borough's policy makers, adopted a civil rights policy prohibiting discrimination and violation of any person's constitutional rights by Borough employees, officials, appointees, volunteers, etc. 5/21/18 Council meeting minutes adopting Resolution 2018-150, p. 2-4 (JA229-231); 5/31/18 Resolution 2018-150 proof of publication (JA232-235). In addition, the Mayor and Council maintain Borough Policies and Procedures Manuals

prohibiting harassment towards anyone including non-employees. Resolution 2023-318 (JA238); Manuals (JA239-242). However, pursuant to Monell, the Borough is not liable when an employee does not follow Borough policy. Hightower v. City of Phila., 130 F.4th 352, 356 (3d Cir. 2025) ("the city is not liable just because its employees did not follow this policy"); Porter, 975 F.3d at 385 (same). This is because municipalities are not liable for the acts of individual employees. Porter, 975 F.3d at 382.

The Governing Body never vested the Construction Official, or anyone else, with authority to enact Borough policy in the area of civil rights. Rather pursuant to the UCC, the Construction Official enforces the UCC independently of the Borough as follows: (1) State law (the UCC) preempts the entire field of construction code enforcement; (2) the Construction Official enforces State law (UCC) as the enforcing agency of the State Department of Community Affairs ("DCA") (not the Borough); (3) the Construction Official is subject to the State's (DCA) supervision, not the Borough's supervision; and (4) the DCA "has the exclusive right to discipline" the Construction Official. Voges v. Borough of Tinton Falls, 268 N.J. Super. 279, 285-286, 633 A.2d 566, 569-570 (App. Div. 1993); J.P. Properties, Inc. v. Macy, 444 A.2d 1131, 1134, 183 N.J. Super. 572, 579 (Law Div. 1982) (discipline of construction official "is the sole province of the State);

N.J.S.A. 52:27D-121, 52:27D-123.1, 52:27D-124(k), 52:27D-126(a); N.J.A.C. 5:23-1.4 (*see* definition of "enforcing agency"); Recanati Dep. 27:18-28:1; 30:11-25; 76:11-16 (JA250-251; JA262).

The UCC's "legislative scheme evidences a strong State policy to establish uniform[] standards" and "the legislative intent was to insure the appointment of licensed professional municipal building code officials and to ensure that their tenure in office be free of … influence[] [from] … local politics." Vosges, 268 N.J. Super. at 286, 633 A.2d at 570. Therefore, "the detail of the state scheme is so pervasive or comprehensive that it effectively precludes the coexistence of municipal regulation…." Home Builders League of South Jersey, Inc. v. Evesham Twp., 416 A.2d 81, 86, 174 N.J. Super. 252, 260 (Law Div. 1980). The UCC requires the Borough to appoint a Construction Official to serve as the chief administrator of the enforcing agency for the DCA. N.J.S.A. 52:27D-126(a), (b)(1); N.J.A.C. 5:23-4.4(a)(1).

Accordingly, the Construction Official's authority to grant permits and issue SWOs is controlled by UCC standards "which are formulated at the state level" and his decisions are reviewable by the County Construction Board of appeals (not the Borough). Ordinance §12-1.2 (JA1720); Plemmons v. Blue Chip Ins. Serv., Inc., 387 N.J Super. 551, 572, 904 A.2d 825, 838 (App. Div. 2006). The UCC authorizes the Construction Official to issue SWOs when

construction contravenes the UCC, other applicable law or ordinance or the permit. N.J.S.A. 52:27D-132(c); N.J.A.C. 5:23-2.31(d). The permit is conditioned upon compliance with the UCC as well as any prior approvals, such as the Resolution and Developer's Agreement. N.J.A.C. 5:23-2.16(j)(2). The Construction Official must follow a checklist of required documents for the issuance of permits and lacks discretion to deviate from the checklist. Recanati Dep. 93:22-94:16 (JA266-267); N.J.S.A. 52:27D-130 (permit application must conform to format prescribed by State); N.J.A.C. 5:23-2.15 (permit application requirements). The Construction Official approves the permit application if it conforms with the UCC and construction shall not commence until a permit issues. N.J.S.A. 52:27D-131(a). As such, the Construction Official is "tightly constrained by the" UCC and "did not have policy making authority" for the Borough as his issuance of SWOs and permits is controlled by the UCC, not Borough policy. Plemmons, 387 N.J. Super. at 572, 904 A.2d at 838. The Construction Official enforces State policy (not Borough policy) which affords no basis for municipal liability. Doby v. DeCrescenzo, 171 F.3d 858, 868 (3d Cir. 1999) (when local government is enforcing state law, without adopting any particular policy of its own, it cannot be held liable under the Monell line of cases).

Plaintiff's attempt to assert a Borough policy of discrimination against Middle Eastern developers based on the Borough attorney's May 26, 2020 email (Pb17-18) fails as this email merely deferred to the Monitor to sign the Developer's Agreement on behalf of the Borough given continuing safety concerns (JA461; JA1502-1503). Indeed, when pressed, Plaintiff could not articulate why he believes his ethnicity was a factor in the email. Qassis Dep. 114:17-115:1 (JA372). Nothing in the email references Middle Eastern developers nor establishes policy. Moreover, Plaintiff misrepresents the record because: (1) Borough counsel's May 26, 2020 email was sent before the Monitor signed the Developer's Agreement on June 4, 2020 at Borough counsel's request (JA487); and (2) it was the Zoning Board, not the Monitor, which approved the project at its September 21, 2016 Whispering Woods hearing as part of a settlement of prior litigation with Plaintiff. Resolution (JA906-917); 9/21/16 Transcript, 6:13-19; 7:11-16; 95:11-97:1 (JA1732; JA1776-1777); Qassis Cert., ¶19-21, ¶23 (JA1436-1437). In New Jersey, land use board settlements must be approved at a public hearing before the land use board consistent with Whispering Woods at Bamm Hollow, Inc. v. Middletown Planning Bd., 220 N.J. Super. 161, 531 A.2d 770 (Law Div. 1987). See Friends of Peapack-Gladstone v. Peapack-Gladstone Land Use Bd., 971 A.2d 449, 450-451, 407 N.J. Super. 404, 407 (App. Div. 2009).

The record lacks any evidence that the Borough's Construction Official, engineer or attorney took any action in execution of a Borough policy of discrimination against Middle Eastern developers. Monell, 436 U.S. at 694; Thorpe v. Upper Makefield Twp., 758 Fed. Appx. 258, 263 (3d Cir. 2018) (dismissing §1983 equal protection claim based on allegations of race-based zoning enforcement actions where record lacked evidence of a nexus between plaintiffs' race and the enforcement actions). Indeed, SWOs issued to other projects. (SWO list, JA711-720). Plaintiff misrepresents the record in asserting that he documented "specific instances of racial animus by Borough Officials" (Pb18). In support thereof, Plaintiff cites to the first page of his response to the SOF (JA1353) and the signature page of his certification (JA1458) neither of which sets forth any supporting evidence.

The District Court correctly determined that Plaintiff's sham affidavit's assertions were wholly unsupported by the record (JA18). Plaintiff's affidavit (¶22) (JA1436-1437) rehashes paragraph 24 of the Complaint and states that unidentified "Others" uttered slurs during the Whispering Woods hearing none of which appear in the transcript of that hearing (JA1729-1778). At his deposition Plaintiff could not identify any speaker of the slurs. Qassis Dep. 134:13-17; 135:14-17 (JA377). Plaintiff's affidavit (¶29-30) (JA1438) also references a 2017 altercation with Sharon

Dunn, an ambulance volunteer, who Plaintiff asserts insulted him with slurs.   Notably, the volunteer does not determine Borough policy and the Governing Body addressed the matter when made aware of the altercation.   Crifasi Dep. 76:20-78:19 (JA158-159).

Plaintiff's assertion of a "sham tax lien" (Pb19) is refuted by the record; the Borough sought to (but did not) recover its emergency action cost even though it was entitled to recovery under both the Developer's Agreement (¶26.5-26.6) (JA484-485) and the UCC. N.J.A.C. 5:23-2.32(b)(5).   Consent Order (JA1779-1780).

*Second*, contrary to Plaintiff's misstatement that his treatment was "markedly different from [the] treatment of other developers" (Pb18), the record contains no evidence that Plaintiff was treated differently from any similarly situated non-Middle Eastern developer *and Plaintiff could not identify any*.   Qassis Dep. 119:24-120:6 (JA373); Plaintiff's Answers to Interrogatories, Nos. 18-19 (JA640).   Nor does Plaintiff adduce any record evidence of purported "selective enforcement" (Pb18).   Plaintiff's citation to the cover pages of his engineer's depositions and over 50 pages of his response to the SOF (Pb19; Pb20) contain no identification of a non-Middle Eastern developer similarly situated in all relevant respects.   This is no surprise given that Plaintiff dug a deep hole next to his neighbor's foundation without protection in violation of the UCC.   N.J.A.C. 5:23-2.34(a); Nicoletti Cert.,

33

¶11-13 (JA872-873); photographs (JA876-881). Plaintiff's failure to identify a non-Middle Eastern developer similarly situated "*in all relevant respects*" is fatal to the Equal Protection claim. Children's Health Defense, Inc. v. Rutgers, 93 F.4th 66, 85 (3d Cir. 2024); Stradford v. Sec'y Pa. Dep't of Corr., 53 F.4th 67, 73, 74 (3d Cir. 2022). *See also* Vurimindi v. City of Phila., 521 Fed. Appx. 62, 66 (3d Cir., Apr. 8, 2013) (affirming dismissal where plaintiff alleged that he was denied permits because he was Indian but identified no similarly situated developers); James v. Vornlocker, 2022 WL 3927203, at *12  (D.N.J., Aug. 31, 2022) (dismissing equal protection claim where plaintiff did not identify similarly situated comparators alike in all relevant respects and did not adduce evidence that defendants required her to obtain a homeowner's warranty for discriminatory reasons); Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992) (plaintiff "must prove … that [he] received different treatment from that received by other individuals similarly situated"); Road-Con, Inc. v. City of Phila., 120 F.4th 346, 359 (3d Cir. 2024) (same); Plemmons, 387 N.J Super. at 566, 904 A.2d at 834 (affirming summary judgment dismissal of §1983 equal protection claim where plaintiff did not present evidence concerning defendants' treatment of other property owners).

34

*Third*, the record lacks evidence that Plaintiff was deprived of a constitutional right. Galarza v. Szalczyk, 745 F.3d 634, 639 (3d Cir. 2014) (plaintiff must establish deprivation of rights secured by the Constitution caused by an official government policy or custom). State law (the UCC) conditions Plaintiff's permit upon compliance with the UCC (and prior approvals) including the provision of signed and sealed plans for the protection of adjoining properties, *i.e.*, shoring plans. N.J.A.C. 5:23-2.16(j)(2); N.J.A.C. 5:23-2.15(f)(1)(i), (vii); N.J.A.C. 5:23-2.34(b); N.J.A.C. 5:23-2.21(b). Thus, Plaintiff was required to abide by the Developer's Agreement and the Resolution, to provide required items for a permit including signed/sealed shoring plans and to comply with governing construction/safety standards. Plaintiff has no Constitutional right to flout such requirements. U. S. v. Baltimore & O. R. Co., 333 U.S. 169, 177 (1948) (property can be used by its owner only in accordance with law); Hill v. Umpstead, 639 Fed. Appx. 60, 62 (3d Cir. Feb. 2, 2016) (Borough Manager's letter threatening notice of violation if plaintiff did not trim hedges does not implicate a violation of a federal constitutional or statutory right under §1983); Anastasio v. Planning Bd. of West Orange Twp., 209 N.J. Super. 499, 519, 507 A.2d 1194, 1204 (App. Div. 1986) (developer was not deprived of constitutionally protected interest by reason

of delay in site plan approval); Joey's Auto Repair & Body Shop v. Fayette County, 785 Fed. Appx. 46, 50 (3d Cir. Aug. 29, 2019) (property owner has no right to conduct business without zoning interference); John E. Long, Inc. v. Borough of Ringwood, 61 F. Supp.2d 273, 285, n. 8 (D.N.J. 1998) (there is no fundamental right to use property any way one wishes).

Finally, Plaintiff's new "class of one" theory is forfeit because it was never asserted below nor in the complaint. Kars 4 Kids Inc. v. America Can!, 98 F.4th 436, 452 (3d Cir. 2024); Hamer v. LivaNova Deutschland GmbH, 994 F.3d 173, 179 (3d Cir. 2021) (claims not raised in complaint cannot be considered as a basis for appeal). Rather, Plaintiff pursued his Equal Protection claims based upon protected class membership. In contrast, the "class of one" theory allows for an Equal Protection claim on behalf of a "class of one" where the plaintiff does not allege membership in a class or group. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). In any event, any "class of one" theory fails because Plaintiff cannot identify a similarly situated developer. Hill, 455 F.3d at 239 ("class of one" plaintiff must identify similarly situated party who was treated differently).

## POINT IV
**THE DUE PROCESS CLAIM (COUNTS SEVEN AND NINE) WAS PROPERLY DISMISSED BECAUSE THE RECORD LACKS EVIDENCE OF AN UNCONSITUTIONAL POLICY/CUSTOM AND/OR CONDUCT SHOCKING THE CONSCIENCE**

Counts Seven and Nine of the complaint allege that the Borough's attorney, engineer and Construction Official deprived Plaintiff of substantive due process under §1983 and the NJCRA (¶146; ¶159) (JA67; JA69). These Counts fail because the record lacks evidence of a Borough policy or custom of opposition to developers of Middle Eastern descent as delineated at Point III, *supra*.

In addition, these claims were properly dismissed because Plaintiff cannot meet the "applicable legal standard to prove a substantive due process claim [which] is quite high." Affinity v. Healthcare Group Voorhees, LLC v. Twp. of Voorhees, 624 F. Supp.3d 494, 521 (D.N.J. 2022) (dismissing substantive due process claim on summary judgement where planning board denied permit for opioid treatment facility even though "a few stray discriminatory questions and comments were made" at board hearings). Specifically, the record lacks evidence of "the most egregious official conduct" that "shocks the conscience."[6] United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392, 400

---

[6] The elements of a substantive due process claim under the NJCRA are the same as under §1983. Rezem Family Associates, LP v. Borough of Millstone, 423 N.J. Super. 103, 115, 30 A.3d 1061, 1067-1068 (App. Div. 2011).

37

(3d Cir. 2003); Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004).  This test is designed to avoid converting federal courts into super zoning tribunals.  Eichenlaub, 385 F.3d at 285; United Artists, 316 F.3d at 402.

The Third Circuit maintains that "it is not the role of federal courts to provide a remedy for merely aggrieved land owners" because the governing "standard demands more." Skiles v. City of Reading, 449 Fed. Appx. 153, 158 (3d Cir., Oct. 27, 2011) *citing* Eichenlaub, 385 F.3d at 285.  As the Third Circuit correctly reasoned, "every appeal by a disappointed developer … involves some claim of abuse of legal authority, but it is not enough simply to give these … claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983. Land-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives.'" United Artists, 316 F.3d at 402.[7] Thus, the denial of a property right in the context of municipal governance rarely will rise to the level of a substantive due process violation.  Rivkin v. Dover Twp. Rent

---

[7] As far as "matters of local concern", Plaintiff could have (but did not) appealed the SWOs of 2020 and thereafter to the Bergen County Construction Board of Appeals.  N.J.A.C. 5:23A–2.1; Ordinance §12-1.2 (JA1720).

Leveling Bd., 143 N.J. 352, 366, 368, 671 A.2d 567, 574 (1996) (biased board member's conduct did not shock the conscience).

The Third Circuit's decision in Eichenlaub warranted the dismissal of Counts Seven and Nine.  In Eichenlaub, the plaintiffs filed substantive due process claims alleging that the township and its officials denied or delayed authorization to develop their properties.  The District Court dismissed the claims on summary judgment.  The Third Circuit affirmed and held that the conduct involved did not shock the conscience despite plaintiffs' "assert[ions] that zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the [plaintiffs]." Eichenlaub, 385 F.3d at 286.  The Third Circuit held that "these complaints are examples of the kind of disagreement that is frequent in planning disputes." Id. at 286.

Therefore, claims "that the defendants applied zoning requirements unfairly, pursued unnecessary enforcement actions, and delayed permits and approvals fail[] to satisfy th[e] standard." Miller v. Pocono Ranch Lands Prop. Owners Ass'n, 557

39

Fed. Appx. 141, 144-145 (3d Cir., Feb. 21, 2014) *citing* Eichenlaub, 385 F.3d at 286.

Applying Eichenlaub, the Third Circuit again affirmed summary judgment dismissal of a landowner's substantive due process claim because the subject conduct "simply did not shock the conscience" even if the township and its officials intentionally refused to cooperate with the landowner in connection with its zoning application, improperly applied township ordinances, treated the landowner differently from nearby owners, intentionally subverted the landowner's attempts to develop its property and actively sought reasons to deny the landowner an opportunity to develop its land including claiming spurious deficiencies in the landowner's development application. *See* Highway Materials, Inc. v. Whitemarsh Twp., 386 Fed. Appx. 251, 257-258 (3d Cir. July 7, 2010). Nor was the Court swayed by the township attorney's statement to the landowner that "the township is not going to work with you and help you on a controversial development…." Id. The Court surveyed pertinent case law and reiterated that conduct involving delay tactics, improper tax assessments and refusals to issue permits does not shock the conscience. Id.

Accordingly, the District Court correctly assessed that Plaintiff's assertions exemplify the type of contentions which do not shock the conscience under Eichenlaub and its progeny (p. 19)

(JA19). As explained at Point III, *supra*, the issuance of permits and SWOs is governed by the State (not the Monitor or the Borough) and the Construction Official is an agent of the State who is "tightly constrained by the" UCC and must enforce the UCC. Plemmons, 387 N.J Super. at 572, 904 A.2d at 838. The SWOs were issued due to work performed without a permit which is unlawful under the UCC. N.J.A.C. 5:23-2.14(a). The Borough Engineer's emergency action to protect the Adjoining Home and public safety is expressly authorized by the Developer's Agreement (¶26.5-26.6) (JA484-485) and the UCC. N.J.A.C. 5:23-2.32(b)(2). Even Plaintiff's engineer agreed "that this was the only option" (5/12/25 Reme Dep 113:19-114:14) (JA516-517). Under the Developer's Agreement (¶26.5-26.6) (JA484-485) and the UCC (N.J.A.C. 5:23-2.32(b)(5)), the Borough was entitled to recover the cost of the emergency action but, in any event, the cost was never recovered. Consent Order (JA1779-1780). As for the permit, Plaintiff received the permit upon compliance with State law requirements. Specifically, permits cannot be issued without signed/sealed shoring plans. *See* N.J.A.C. 5:23-2.15(f)(1)(i)(1); N.J.A.C. 5:23-2.15(f)(1)(vii), (ix); N.J.A.C. 5:23-2.21(b). Consulting engineer, Titan, advised that work cease until Plaintiff submitted shoring plans meeting with engineer approval and determined that Plaintiff's proposed shoring system was

41

"highly unstable" and "affects the safety of surrounding sidewalks, roadways and neighboring buildings." Shuman Cert., ¶15; 9/9/20 Shuman report, p. 8, ¶1-2 (JA1291). Plaintiff has not adduced evidence of slurs by the Borough's policymakers, *i.e.*, the Governing Body.[8] None of Plaintiff's record citations contain evidence to the contrary (Pb22-23). In addition, Plaintiff misrepresents that the Borough conducted excavation at the Site (Pb24) which contradicts his deposition testimony. Qassis Dep. 162:17-21; 174:2-15 (JA384; JA387).

Moreover, there is "no evidence … that racial invidiousness, corruption or self-dealing motivated" the Borough's attorney, engineer and Construction Official in their efforts to ensure safety and UCC compliance. Button v. Snelson, 679 Fed. Appx. 150, 154 (3d Cir. Feb. 10, 2017) (overzealous, ill-advised, contentious performance of official duties does not shock the conscience).

---

[8] Plaintiff claimed that he "kind of" overheard the Administrator utter the term "camel jockey" in conversation with someone else from across the street but Plaintiff does not "remember the conversation" and did not overhear any other portion of the conversation nor report it to anyone. Qassis Dep. 126:1-127:4 (JA375). The Administrator is not a policy maker and had no role in the SWOs and emergency action. Ordinance §2-7A.5 (Administrator cannot exercise Governing Body's powers) (JA1723); Ordinance §2-7A.6 (Administrator cannot exercise powers of elected/appointed officials) (JA1725); Ordinance §2-4 to §2-6 (JA721-724); Crifasi Dep. 90:4; 93:16-94:12; 109:19-20; 84:21-22; 111:4-16; 112:4-25; 114:7-12 (JA162-163; JA166-168; JA160); Neglia Cert., ¶29 (JA901). Plaintiff also claims Mark Dunn, a neighbor hired as a Borough mechanic after this litigation began, used slurs twice in the past. Qassis Dep. 118:2-14 (JA373); Crifasi Dep. 8:5-10 (JA142).

*See also* <u>Skiles</u>, 449 Fed. Appx. at 158 (affirming dismissal where town closed night club with homosexual clientele citing code violations notwithstanding that plumbing inspector referred to plaintiff/club owner as a "faggot"); <u>Vurimindi</u>, 521 Fed. Appx. at 65-66 (affirming dismissal where plaintiff alleged that he was denied permits because he was Indian but his "complaints are of the sort frequently at issue in … land use disputes"); <u>Thorpe</u>, 758 Fed. Appx. at 263 (dismissing substantive due process claim based on allegations of race-based zoning enforcement actions where record lacked evidence of a nexus between plaintiffs' race and the enforcement actions); <u>James</u>, 2022 WL 3927203, at *9-10 (granted summary judgment dismissing substantive due process claim alleging race-based stop work orders, permit denials, fines and delay where defendants provided rationale for various decisions); <u>Sameric Corp. v. City of Phila.</u>, 142 F.3d 582, 596 (3d Cir. 1998) (dismissing developer's constitutional claim where it merely "presents a claim in the nature of an average dispute between a property owner and local zoning officials"); <u>Fernandes</u>, 2017 WL 2799698, at *8 (stop work order and refusal to acknowledge permit does not shock the conscience even if there was some selective enforcement); <u>Bezerra</u>, 2006 WL 1971807, at *7-10 (dismissing substantive due process claim on summary judgment where plaintiff alleged stop work order and campaign of obstruction and harassment

to prevent his completion of development projects); Long, 61 F. Supp.2d at 284 (dismissing due process claim where allegations "merely demonstrate that Plaintiff vehemently disagrees with the conclusions" of the planning board's consultant); Plemmons, N.J. Super. at 569, 904 A.2d. at 836 (actions that delayed property owner's efforts to convert property from residential to commercial uses did not shock the conscience); Joey's Auto Repair, 785 Fed. Appx. at 48 (affirming dismissal where plaintiffs alleged township revoked their zoning certificate because of plaintiffs' feud with neighbors alleged to have a close relationship with the county commissioner); Cherry Hill Towers LLC v. Twp. of Cherry Hill, 407 F. Supp.2d 648, 655-656 (D.N.J. 2006) (three-month delay in issuance of permits does not shock the conscience notwithstanding contention that delay was tactic to pressure plaintiff to use union labor); Papaiya v. City of Union City, 238 Fed. Appx. 848, 851 (3d Cir. Aug. 14, 2007) (closure of plaintiffs' apartment buildings over safety concerns did not shock the conscience).

Moreover, Plaintiff cannot prove deprivation of a protected liberty interest as there is no right to develop land contrary to law as set forth at Point III, *supra*. Steele v. Cicchi, 855 F.3d 494, 502 (3d Cir. 2017) (plaintiff must prove deprivation of a liberty interest protected by substantive due process which shocks the conscience).

44

<u>**POINT V**</u>

**THE RECORD NEGATES A TAKING (TOTAL AND PARTIAL) AND THE POLICE POWER BARS THE TAKING AND INVERSE CONDEMNATION CLAIMS**

Count Four of the complaint alleges that the SWOs and emergency declaration constituted a temporary taking under the Fifth Amendment of the U.S. Constitution which deprived Plaintiff of all beneficial use of the property for months (Complaint, ¶127-129) (JA64-65).  Plaintiff asserts that he was deprived of beneficial use of the property "from June 13, 2020 through September 18, 2020" (Plaintiff's Answer to Interrogatory No. 17) (JA640).  Count Five of the complaint alleges that the SWOs and emergency declaration constituted an inverse condemnation of property (Complaint, ¶133) (JA686-687).  Counts Four and Five are subject to the same analysis.  *See* <u>Pappas v. Bd. of Adjustment of Leonia</u>, 254 N.J. Super. 52, 56, 603 A.2d 65, 67-68 (App. Div. 1992).

**A.    <u>No Total Taking</u>**

A taking requires a showing that the landowner was deprived of all economically beneficial use of the property.  <u>Nekrilov v. Jersey City</u>, 45 F.4th 662, 670 (3d Cir. 2022). Plaintiff was not deprived of all economic use of his property as he retained possessory interest therein and he could sell it.   <u>Id.</u> at 671; <u>Munoz v. City of Union City</u>, 481 Fed. Appx. 754, 759 (3d Cir., May 11, 2012).   Indeed, Plaintiff discussed the possibility of

selling the property to the Borough.   Qassis Dep.   203:5-204:17 (JA394).

Plaintiff misrepresents that Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302 (2002) holds that temporary moratoria can constitute a taking (Pb34).   To the contrary, Tahoe-Sierra holds that "property cannot be rendered valueless by a temporary prohibition on economic use, because the property will recover value as soon as the prohibition is lifted." Id. at 332.   In Tahoe-Sierra, the Supreme Court considered a moratorium on development and held that a 32-month deprivation of all economically viable use of property is not a taking *per se*:

> [T]he extreme categorical rule that any deprivation of all economic use no matter how brief constitutes a compensable taking surely cannot be sustained.   Petitioners' broad submission would apply to numerous normal delays in obtaining building permits, …and the like…. Such a rule would undoubtedly require changes in numerous practices that have long been considered permissible exercises of the police power….   A rule that required compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decision making. Such an important change in the law should be the product of legislative rulemaking rather than adjudication.

Id. at 334-335.   The Court rejected Plaintiff's very argument, *i.e.,* that the "relevant period for takings analysis is the

46

duration of the deprivation" (Pb34).[9]  The plaintiffs in Tahoe-Sierra argued that the Court should "sever a 32-month segment … and then ask whether that segment has been taken in its entirety by the moratoria." Id. at 331. The Court rejected the focus on the 32-month span because otherwise "every delay would become a total ban; the moratorium and the normal permit process alike would constitute categorical takings." Id.  The Court held that the District Court erred in analyzing whether plaintiffs were deprived of all economically viable use during the moratorium period and instead should have analyzed whether there was a total taking. Id. at 331.  The same rationale applies here and negates a taking where Plaintiff obtained his permit in September 2020 (JA644-646) and certified that the project was 85% complete as of 2023. Plaintiff's Answer to Interrogatory No. 13 (JA639).

### B.   No Partial Taking and Police Powers Bar a Taking

In Tahoe-Sierra, the Supreme Court held that, in the absence of a total taking, the governing analysis is that enunciated in Penn Cent. Transp. v. City of N.Y., 438 U.S. 104, 124 (1978). Tahoe-Sierra, 535 U.S. at 331, 338, n. 34, 342.  "Anything less than a complete elimination of value or a total loss … require[s] the … analysis applied in *Penn Central*." Tahoe-Sierra, 535 U.S. at 330.  The same rationale applies here and negates a taking.

---

[9] Plaintiff's bald assertion of a "multi-year window of total deprivation" is unsupported by citation to the record (Pb35).

**(i)**　　**No Interference with Reasonable Expectations**

The governing analysis considers the economic impact particularly the extent to which government action interfered with reasonable investment backed expectations which are "more than a unilateral expectation or an abstract need." Ruckelshaus v. Monsanto Co., 1467 U.S. 986, 1005 (1984); Penn Cent., 438 U.S. at 124. Plaintiff's contention of reasonable expectations is wholly unsupported by citation to evidence in the record (Pb36) and contrary to law because "investment-backed expectations are reasonable only if they take into account the power of the state to regulate in the public interest." Nekrilov, 45 F.4th at 674-675; Murr v. Wisconsin, 582 U.S. 383, 397-398 (2017). Property rights "must yield to the police power." Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1027 (1992).[10] Plaintiff has no "reasonable expectation to profit at the expense of the public at large"; rather, his "activities may be restricted when they intrude upon the interests of adjacent owners" and his expectations "are always circumscribed by the limitations" imposed in the public interest. Keystone Bituminous Coal Assn. v. Duncan, 771 F.2d 707, 716-717 (3d Cir. 1985).

---

[10] In Lucas, the United States Supreme Court recognized precedent absolving government from liability "in cases of actual necessity, to prevent … threats to the lives and properties of others." 505 U.S. at 1029, n. 16.

Action upholding the UCC and public safety does not interfere with reasonable investment backed expectations as Plaintiff cannot develop the Site contrary to State law (UCC) and public safety. "Property interests … are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law…." The Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). *See also* Papaiya, 238 Fed. Appx. at 851, n. 4 (no taking based on closure of apartment buildings for code violations); N.J.A.C. 5:23-2.34(a) (requiring protection of adjoining properties during construction); N.J.A.C. 5:23-2.14(a) (construction without permits is unlawful); N.J.S.A. 52:27D-126(a) (construction official must enforce the UCC).

Indeed, even if the Construction Official had granted Plaintiff permits despite Plaintiff's non-compliance with the UCC, any such action would have been void *ab initio*. Hilton Acres v. Klein, 174 A.2d 465, 470, 35 N.J. 570, 581 (1961) (a building permit issued contrary to building code is void *ab initio*, has no legal efficacy and cannot ground any rights in the applicant). Thus, the Construction Official correctly testified that he "was going to follow the [UCC] rules and regulations in which I was taught and which I was licensed to do" and that the Monitor "can't issue ... permits" under the UCC (Recanati Dep. 142:16-143:1;

171:4-11) (JA279; JA286).    Only State licensed officials are permitted to administer and enforce the UCC.    Voges, 268 N.J. Super. at 285-286, 633 A.2d at 569-570.    Under the UCC, it is the Construction Official who issues the permits. N.J.S.A. 52:27D-131; N.J.A.C. 5:23-4.4(b); N.J.A.C. 5:23-4.5(h)(1)(vii).    "No person shall act as construction official unless the [State DCA] commissioner determines that person is so qualified…." N.J.S.A. 52:27D-126(c).    *See also* N.J.S.A. 52:27D-123.1 (UCC regulates all construction, removal, etc.).    The UCC mandates that the Construction Official "shall require compliance with the provisions of the code…." N.J.S.A. 52:27D-126(b)(1). Accordingly, Plaintiff fails in his efforts to argue that the Monitor can override the UCC and enable Plaintiff to circumvent State law which preempts the field of construction.    Voges, 268 N.J. Super. at 285-286, 633 A.2d at 569.    Plaintiff's assertion that the Monitor "superseded [the Construction Official] for permit decisions" contravenes the UCC (Pb38).    Nothing in the Monitor's 2006 appointment order (JA462-471) allows for that and, even if it did, it would be an *ultra vires* encroachment upon the Legislature's enactment of the UCC.    Property Owners Ass'n of N. Bergen v. N. Bergen Twp., 378 A.2d 25, 30, 74 N.J. 327, 338 (1977) (judiciary cannot exercise discretion entrusted to the legislative body); Howell Twp. v. Manasquan River Reg'l Sewerage Auth., 521 A.2d 858,

862, 215 N.J. Super. 173, 181 (App. Div. 1987) (courts must refrain from usurping Legislature's function). Notably, the order appointing the Monitor authorized him to oversee applications "that would otherwise be within the jurisdiction of the boards of adjustment, planning boards or administrative officials' jurisdiction under the Municipal Land Use Law" ("MLUL") (6/1/06 Order, ¶1(c)) (JA466). However, the Construction Official's jurisdiction does not derive from the MLUL but from the UCC -- a comprehensive State statutory and regulatory framework which preempts the field of construction. N.J.S.A. 52:27D-126; N.J.S.A. 52:27D-123.1; Voges, 268 N.J. Super. at 285-286, 633 A.2d at 569. Thus, the 6/1/06 Order's reference to permits pertains to zoning permits which are governed by the MLUL and are distinct from permits governed by the UCC. Acqua Dev. Corp. v. Twp. of Holmdel, 671 A.2d 636, 640, 287 N.J. Super. 578, 585 (Law Div. 1995) ("A zoning approval is not a construction approval"; zoning permit issues under MLUL not UCC).

Significantly, the Resolution requires Plaintiff to comply with the UCC (¶5) (JA11). The Developer's Agreement requires Plaintiff to: (1) avoid interfering with adjoining land owners (¶22.3); (2) comply with approved plans (¶1.1-1.2; ¶1.6), the Resolution (¶1.5, ¶2.1) and all laws including State law (¶24.2); and (3) abide by the Borough Engineer's directives (¶2.1; ¶12.1)

and orders of duly constituted officials (¶24.2) (JA472-489). His failure to do so authorizes the issuance of SWOs (¶26.4) (JA484). Therefore, Plaintiff could have no reasonable expectation of exemption from the requirements of the UCC, the Developer's Agreement, the Resolution and governing standards.

In addition, Plaintiff cannot prove that his property's value "was reduced drastically" as required for a partial taking claim. Nekrilov, 45 F.4th at 674. Rather, Plaintiff: (1) produced two appraisals reflecting that his property appreciated in value from $4,400,000 as of December 7, 2020 to $11,000,000 as of June 10, 2023 (JA1791, JA1818); (2) entered into three leases and a sales contract regarding the Site (JA725-756); (3) received payments pursuant thereto (Id.); and (4) represented that construction was 85% complete as of 2023 (Plaintiff's answer to Interrogatory No. 13) (JA639). Plaintiff's assertions of economic impact are unsupported by the record. Plaintiff cites to 47 pages of his response to the SOF which do not support Plaintiff's assertions. Pb35 *citing* JA1353-1400. For instance, Plaintiff never paid a $32,887 tax lien and there was no "diminution in value" since his property almost tripled in value. 8/5/20 Genova Burns letter (Ja1536-1537); Consent Order (JA1779-1780); appraisals (JA1791, JA1818).

Alternatively, Plaintiff could have remedied the conditions prompting the SWOs and emergency action and satisfied the requisites for a permit.  Plaintiff eventually satisfied the UCC requisites for a permit by providing compliant shoring plans. Papaiya, 238 Fed. Appx. at 851, n. 4 (if plaintiffs "had fixed the code violations, they could have rented the apartments or sold the buildings"); Ajamian v. N. Twp. of Bergen, 103 N.J. Super. 61, 82-83, 246 A.2d 521, 533 (Law Div. 1968) (plaintiff could have corrected conditions which prompted closure of his apartment building).

### (ii)   Valid Exercise of Police Power bars Taking

The governing analysis also considers the character of the government action.  Penn Cent., 438 U.S. at 124.  The SWOs and emergency declaration were an exercise of police power that does not constitute a taking.  JWC Fitness, LLC v. Murphy, 469 N.J. Super. 414, 436-437, 265 A.3d 164, 177-178 (App. Div. 2021) (Covid Executive Orders closing gym for three months were a valid exercise of police power and were not a taking).  *See also* U.S. v. Riverside Bayview Homes, Inc., 474 U.S. 121, 127 (1985) (denial of a permit does not constitute a taking); Natsis v. Turner, 2020 WL 4582018, at 23 (D.N.J., Aug. 10, 2020) (denial of permits and selective enforcement of ordinances was not a taking); Long, 61 F. Supp.2d at 288 (denial of rezoning application was not a taking); Griffith v. State of New Jersey, DEP, 340 N.J. Super. 596, 607, 775 A.2d

54, 61 (App. Div. 2001) (delays in the land use permit and approval process do not constitute a temporary taking); East Cape May Assoc. v.  State of New Jersey, DEP, 300 N.J. Super. 325, 342, 693 A.2d 114, 123 (App. Div. 1997) (delay between initial denial of permit and the ultimate issuance of development permit is not a taking).

The Supreme Court affirms that "many government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property rights." Cedar Point Nursery v. Hassid, 594 U.S. 139, 160 (2021). The Supreme Court reasoned as follows:

> [T]he government does not take a property interest when it merely asserts a "pre-existing limitation upon the land owner's title." For example, the government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place.
>
> These background limitations also encompass traditional common law privileges to access private property. One such privilege allowed individuals to enter property in the event of public or private necessity. See Restatement (Second) of Torts §196 (1964) (entry to avert an imminent public disaster); §197 (entry to avert serious harm to a person, land, or chattels).

Cedar Point, 594 U.S. at 160-61.  *See also* Lucas, 505 U.S. at 1022-1023 (noting long line of Supreme Court cases sustaining police powers to enjoin activities akin to public nuisances against

takings challenges); Penn Cent., 438 U.S. at 1245 (no taking where land use restriction based on health, safety or general welfare).

Nat'l Amusements, Inc. v. Borough of Palmyra, 843 F. Supp.2d 538, 546 (D.N.J. 2012) *aff'd* 726 F.3d 57, 63 (3d Cir. 2013) supports affirming the dismissal of Counts Four and Five. In Palmyra, the District Court held that the borough's five-month closure of a flea market for removal of live munitions was a valid exercise of police power and did not amount to a temporary taking even though plaintiff's expert opined that it was safe to reopen the flea market earlier. The District Court held that the borough was well within its discretion to keep the flea market closed longer "to bring the [public safety] risk … from minimal to zero." 843 F. Supp.2d at 546. The Third Circuit affirmed and held that the borough's emergency action to temporarily close the flea market was an exercise of its police power that did not constitute a compensable taking. 726 F.3d at 63. *See also* Duffy v. Kent County Levy Court, 591 Fed. Appx. 41, 44 (3d Cir., Nov. 14, 2014) (no taking where public entity demolished structures deemed unsafe pursuant to its police power); Munoz, 481 Fed. Appx. at 759 (same); Ajamian, 103 N.J. Super. at 72-74, 246 A.2d at 526-528 (summary abatement of nuisance in exercise of police power is not a taking).

Similarly, the Borough Engineer exercised the police power to ensure the public welfare in the face of an emergency and the

Construction Official, as an agent of the State, ensured UCC compliance. The exercise of police power is presumed to be constitutionally valid and Plaintiff fails to carry his burden to prove otherwise. Bibb v. Navajo Freight Lines, 359 U.S. 520, 529 (1959); Goldblatt v. Town of Hempstead, N.Y., 369 U.S. 590, 596 (1962). Plaintiff's contention of bad faith enforcement (Pb36-37) is wholly unsupported by any citation to the record and is refuted by the record. The SWOs were issued for violation of the UCC, *i.e.*, work performed without a permit. N.J.A.C. 5:23-2.14(a). The Borough attorney's May 26, 2020 email had the Monitor sign the Developer's Agreement for the Borough given ongoing safety concerns. 5/26/20 email (JA461); 5/25/20 letter from Joseph Donahue, Esq. (JA1502-1503). Regarding the emergency action of stabilizing the Site with backfill, Plaintiff's engineer conceded that it "was the only option…." 5/12/25 Reme Dep. 114:5-14 (JA517). Non-parties Titan and Fletcher Creamer deemed emergency action necessary. Shuman Cert., ¶8-9; Neglia Cert., ¶27-28. The Developer's Agreement and the UCC (N.J.A.C. 5:23-2.32(b)) expressly provide for the emergency action (¶26.5; ¶26.6) (JA484-485). Following Storm Fay, Titan recommended that excavation work cease until Plaintiff submitted shoring plans meeting with the Borough Engineer's approval and determined that Plaintiff's proposed shoring system was "highly unstable" and

"affects the safety of surrounding sidewalks, roadways and neighboring buildings." Shuman Cert., ¶15 (JA990-991); 9/9/20 Shuman report, p. 8, ¶1-2 (JA1291). Plaintiff received his permit upon furnishing compliant shoring plans. 9/17/20 Shuman report, p. 9, ¶1 (JA1311); permit (JA644-646). Moreover, the tax lien for recovery of emergency costs was annulled (JA1779-1780) even though such recovery was authorized by the Developer's Agreement (¶26.5-26.6) (JA484-485) and the UCC. N.J.A.C. 5:23-2.32(b)(5).

Plaintiff cites to no evidence in the record for his conclusion that the request for more robust shoring "went beyond code." (Pb37). Rather, Plaintiff's engineer testified, "[w]e knew … there was some washout or some subsidence in the soil occurring on the neighbor's property" "once we had soil loss going on, we knew there was a problem" and "[w]e had to … rethink our approach on this whole shoring matter" "we had to develop something that was … more substantial" "[s]o at this point we started to develop a plan for a more … robust type shoring" in order to protect the Adjacent Home and the sidewalk and roadway. 5/12/25 Reme Dep. 85:9-86:6 (JA510-511). Plaintiff cites to no evidence in the record for his baseless conclusion that shoring requirements "were applied selectively to Plaintiff and continued … when no emergency existed." (Pb37). In any event, Plaintiff is not qualified to dispute the safety assessment of the engineers and

infrastructure personnel who were actually on Site the day of the emergency, namely, the Borough Engineer, Titan and Fletcher Creamer.

Plaintiff errs in comparing this matter to Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982) because Loretto involved a permanent physical occupation of property which is subject to a different standard. Id. at 428, 430, 434 (distinguishing permanent physical occupation from a more temporary physical invasion). Similarly, Plaintiff's citation to Dolan v. City of Tigard, 512 U.S. 374 (1994) is unavailing. Dolan reaffirmed that "Government could hardly go on if to some extent values incident to property could not be diminished without paying for every such" government action. Id. at 384-385 Dolan did not hold that "pretextual or bad faith enforcement" of permit requirements constitutes a taking (Pb37). Rather, Dolan merely held that a municipality can condition the grant of a building permit upon an easement, *i.e.*, the property owner's dedication of a portion of her property for public use. Id. at 386. In contrast, Plaintiff's permit was never conditioned upon an easement, but upon compliance with the UCC and safety standards.

A taking through an exercise of the police power "occurs only when the" action "has nearly the same effect as the complete destruction" of the owner's property rights. Pace Res., Inc. v.

Shrewsbury Twp., 808 F.2d 1023, 1033 (3d Cir. 1987) (no taking where property value depreciated from $495,600 to $52,000 after rezoning).   That is not the case here where Plaintiff sold and leased apartments (JA725-756) and his property almost tripled in value (JA1791; JA1818).

## CONCLUSION

For all of the aforesaid reasons, it is respectfully submitted that the District Court's order of November 10, 2025 dismissing Counts Three through Nine of the complaint should be affirmed.

Respectfully submitted,


By: s/ Jessica V. Henry
Jessica V. Henry, Esq.
Attorney ID No. 050901995
CLEARY GIACOBBE ALFIERI JACOBS, LLC
169 Ramapo Valley Road
Upper Level- Suite 105
Oakland, New Jersey 07436
Tel: 973-845-6700
jhenry@cgajlaw.com

Dated: June 5, 2026

**CERTIFICATION OF BAR MEMBERSHIP PURSUANT TO LAR 46.1(e)**

At least one of the attorneys whose names appear on the Brief is a member of the bar of this Court.  I declare under penalty of perjury the foregoing is true.

By: s/ Jessica V. Henry
    Jessica V. Henry, Esq.
    Attorney ID No. 050901995
    CLEARY GIACOBBE ALFIERI JACOBS, LLC
    169 Ramapo Valley Road
    Upper Level-Suite 105
    Oakland, New Jersey 07436
    Tel: 973-845-6700
Dated: June 5, 2026       jhenry@cgajlaw.com


**CERTIFICATIONS PURSUANT TO LAR 31.1(c)**

The text of the Defendant's electronic Brief is identical to the text of the paper copies thereof.  A virus detection program has been run on the file and no virus was detected.  The virus detection program used was Threatdown. I declare under penalty of perjury the foregoing is true.

By: s/ Jessica V. Henry
    Jessica V. Henry, Esq.
    Attorney ID No. 050901995
    CLEARY GIACOBBE ALFIERI JACOBS, LLC
    169 Ramapo Valley Road
    Upper Level-Suite 105
    Oakland, New Jersey 07436
    Tel: 973-845-6700
Dated: June 5, 2026       jhenry@cgajlaw.com

## <u>CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT PURSUANT TO</u> <u>Fed. R. App. P. 32 (a)(7)(B)/ Fed. R. App. P. 32 (g)</u>

This document complies with the word limit of <u>Fed. R. App.</u> <u>P.</u> 32(a)(7)(B) because, excluding parts of the document exempted by <u>Fed. R. App. P.</u> 32(f), this document contains 12,642 words.

This document complies with the typeface requirements of <u>Fed.</u> <u>R. App. P.</u> 32(a)(5) and the type-style requirements of <u>Fed. R.</u> <u>App. P.</u> 32(a)(6) because this document has been prepared in a monospaced typeface using Microsoft® Word 2024 MSO (Version 2604 Build 16.0.19929.20172) 64-bit in 12-point Courier New font with 10 characters per inch.

By: <u>s/ Jessica V. Henry</u>
Jessica V. Henry, Esq.
Attorney ID No. 050901995
CLEARY GIACOBBE ALFIERI JACOBS, LLC
169 Ramapo Valley Road
Upper Level-Suite 105
Oakland, New Jersey 07436
Tel: 973-845-6700

Dated: June 5, 2026         jhenry@cgajlaw.com

**CERTIFICATE OF SERVICE PURSUANT TO F.R.A.P. 25(d)/L.A.R. 31.1(d)**

On June 5, 2026, I caused this brief to be electronically filed.  I further certify that the following are Filing Users and were served electronically by the Notice of Docket Activity: Anthony S. Bocchi, Esq., counsel for Plaintiffs Paul Qassis and Petra Holdings LLC.  I swear under penalty of perjury under United States laws that the foregoing statements are true and correct.

By: s/ Jessica V. Henry
      Jessica V. Henry, Esq.
      Attorney ID No. 050901995
      CLEARY GIACOBBE ALFIERI JACOBS, LLC
      169 Ramapo Valley Road
      Upper Level-Suite 105
      Oakland, New Jersey 07436
      Tel: 973-845-6700

Dated: June 5, 2026      jhenry@cgajlaw.com